## BURDSALL *v.* CURRAN and others.

*(Circuit Court, N. D. Illinois. July 16, 1883 )*

PATENT LUMBER DRIERS—INFRINGEMENT.

 Comparison made of the patent used by the complainant with that previously assigned by him to Burdsall, as to the state of Wisconsin. Infringement found as to the first, second, fifth, sixth, and seventh claims of the reissue patent No. 8,846, and the first, second, third, fifth, sixth, and seventh claims of reissue No. 8,840, including the projecting platform for loading and unloading; flexible self-adjusting car; partition located for the purpose of confining passing air close to the pipes; dead-air chamber; horizontal and vertical partitions in the 8,846; and the steam-pipes arranged upon the inclined ground floor; the steam-pipes in "gate form," with expansion joints and headers; the broad chimney, with the two small chimneys, separated by inclined deflecting boards; the curtain or sliding door; and the curtain depending from the top of the drying chamber to the lumber in the drying-room.

In Equity.
*West & Bond,* for complainant.
*G. L. Chapin* and *E. G. Hanecy,* for defendants.

BLODGETT, J. This suit is brought for infringement of letters patent No. 161,490, dated March 30, 1875, issued to John J. Curran and Carlos Wilcox, which was reissued August 12, 1879, to John J. Curran and Carlos Wilcox, being reissue No. 8,846, and of letters patent No. 189,432, dated April 10, 1877, issued to John J. Curran and Carlos Wilcox, assignor, and reissued August 12, 1879, to the same parties, reissue No. 8,840. Both of these patents are for devices applicable to lumber-driers. Complainant claims ownership of all the rights, title, and interest in and to these patents, by mesne assignments from Curran and Wilcox to himself, for the state of Wisconsin and other states; but the infringement claimed in this suit is only for the state of Wisconsin. The validity of the patents and of the reissue is admitted by the defendants' answer, although it would probably not lie in the mouth of Curran, the defendant, who was the original patentee, to whom the original patents and reissues were issued, to deny their validity. The only issues in the case, therefore, are as to the complainant's title, and the question of infringement. The complainant's title, as shown by the proof, comes through a series of mesne assignments, and seems to me clearly to clothe the complainant with the entire title for the state of Wisconsin. I have not deemed it necessary, for the purposes of this suit, to examine the chain of title as to the other states claimed by complainant.

 Complainant claims an infringement of the first, second, fifth, sixth, and seventh claims of reissue No. 8,846, and of the first, second, third, fifth, sixth, and seventh claims of reissue No. 8,840. The proof upon the question of infringement consists in the production of a model which the proof shows correctly represents three lumber-driers built by defendants,—two at Oshkosh and one at Neenah, Wisconsin.

 The first claim of reissue No. 8,846 is—

"(1) In a kiln for drying lumber, the inclined floor, B, extending beyond the ends of the kiln to form the loading and unloading platform, and provided with the openings, e, and sheet-metal part, f, substantially as and for the purpose herein set forth."

An inspection of the model certainly exhibits the inclined floor, B, as described in the original and reissued Curran patent, with the extensions beyond the end of the kiln, so as to form a loading and unloading platform, with the opening, e, and sheet-metal part, f.

As to the second and third claims, which refer to the flexible self-adjusting car for lumber-driers, particularly described in the specifications, the infringement of these claims is not specifically alleged in the bill, nor does the model produced show the form of car used by the defendant; but I find in the proofs, as I read them, evidence showing that the defendants have used substantially the same car which is described in the complainant's patent.

The fifth claim of the patent is as follows:

"(5) In a hot-air lumber-drier, the combination, with the inclined car-track, and heating-pipes located beneath the track, of a partition, $a^1$, placed below the track-bed, and proximate to the heating-pipes, for the purpose of confining the passing air close to the pipes, substantially as set forth."

The model in evidence certainly shows this partition, $a^1$, almost in precisely the locality and performing necessarily the function that is provided for in the fifth claim.

The sixth claim is as follows:

"(6) In a hot-air lumber-drier, the combination, with the drying-chamber, located above the floor, B, and the heating-chambers, located below said floor, of the dead-air chamber, I, substantially as shown and described."

This dead-air chamber is the space between the track floor and the partition, $a^1$, and is found in the model in evidence before me, there performing the function of the dead-air chamber in the patent.

The seventh claim is:

"(7) In a hot-air lumber-drier, the combination, with inclined bottom, B, and steam-pipes, E, E, of the horizontal partition, $a^1$, and the vertical partitions, $w$, arranged alternately above and below the pipes, substantially as and for the purpose herein set forth."

The pipes shown in the drawings of the complainant's patent are arranged longitudinally, while the defendants, in the construction of their driers, as shown by their model in evidence, set their pipes transversely across the heating chamber, so that they form gates or obstructions to the passage of the air, thereby compelling the air to pass around and between each bank of pipes, so that in its passage from its point of entrance to the exit from the heating chamber the air comes in contact with all the pipes, and therefore becomes thoroughly heated. In the arrangement shown in the patent, the pipes running lengthwise of the heating chamber, it was deemed necessary to force the air into contact with the pipes by means of these partitions. I do not construe this patent as requiring the heating-pipes to run lengthwise of the heating chamber; but they may be arranged

in the heating chamber in any way so as to secure the largest amount of radiation upon the air which it is designed to heat in its passage through the chamber from its point of introduction to its exit; and, undoubtedly, the defendant, by the transverse coils of pipes, has avoided the necessity for the partitions, *w.* They have used all the other parts of the combination described in the seventh claim; but, there being no necessity for the specific use of the partitions, *w*, they have used in place thereof the transverse coils of pipes, which perform the same function in the organization, and therefore, in my opinion, do infringe this claim, so that they practically use the entire combination.

The claims in reissue No. 8,840, which it is insisted that the defendants infringe, are as follows:

"(1) In a kiln for drying lumber, the steam-pipes, C, arranged upon the inclined ground floor, B, and underneath the inclined floor, O, of the drying chamber on which the cars run, as and for the purpose herein set forth.

"(2) The steam-pipes, C, set up in gate form across the kiln, with free expansion joints and headers running across and lengthwise of the kiln, substantially as and for the purpose herein set forth.

"(3) The broad chimney, M, extending entirely across the kiln, and provided with the two chimneys, $M^1$, $M^1$, separated by inclined deflecting boards, as set forth."

"(5) In combination with a drying chamber and a chimney which opens therefrom at the top and at one end of said chamber, the curtain or sliding door, N, located as shown, and extending across the chamber to form a downward extension of the chimney of the full width of the drying chamber, substantially as and for the purpose as set forth.

"(6) In combination with the broad chimney, M, kiln, A, and heating chamber underneath, the sliding door or curtain, N, arranged in the mouth of the chimney, and leaving an opening at the bottom, whereby the hot air is compelled to descend to the floor of the kiln before passing out through the chimney, as set forth.

"(7) The combination with the drying chamber, A, curtain, N, forming a downward extension of the chimney, and the opening, E, for the admission of the hot air from below, of the curtain, $H^1$, depending from the ceiling at a point nearly over the inner edge of the opening, E, and reaching from side to side of the kiln, substantially as and for the purpose as set forth."

The model shows certainly the steam-pipes, C, arranged upon the inclined ground floor, B, and underneath the inclined floor, O, of the drying chamber, in every essential particular as called for by the first claim. It also shows the steam-pipe, C, set up in gate form, and with expansion joints and headers, substantially as provided in the second claim, although specific technical expansion joints may not be used, the return bends of the pipes answering, perhaps, as a substitute for the technical expansion joint; but all the practical purposes in the heating device shown and described in the second claim are necessarily involved, it seems to me, in the form of construction shown in the model in the proof. So, too, the model shows the broad chimney, M, with the two small chimneys separated by inclined deflecting boards, substantially as described in the third claim

of the letters patent. There is proof in the record tending to show that defendants have not, in all cases, used the broad chimney with the double flues and two small chimneys, but have used only one large chimney with a single flue; but I deem this a mere colorable evasion. One broad chimney with a single flue may do all, or substantially all, that the double-flued chimney does, and I think Mr. Curran cannot be permitted to violate his own patent by so slight a variation in the structure. I also find in this model the curtain or sliding door, N, described in the fifth claim, and which is claimed in combination with the other parts of the machine. It is true, there is no special sliding door, but in place of it there is a suspended curtain; but it seems to me to perform just the function which the claim provides shall be performed by the sliding door, N; that is, it forms a downward extension of the chimney of the full width of the drying chamber, and is evidently for the purpose of forcing the air down to the bottom of the chamber before it escapes through the chimney, thereby compelling it to pass along and among the lumber to be dried.

What I have said in regard to the fifth claim applies with equal force to the sixth claim, which covers substantially the same curtain or sliding door, N, arranged in the mouth of the chimney.

The seventh claim covers the curtain depending from the top of the drying chamber, and whose function is to deflect the air from the top of the drying chamber onto the lumber in the drying-room, and it only needs an inspection of the model to see that this feature of the device is most palpably infringed. There may be and probably are some slight mechanical deviations from the specific directions given in both of these patents for the construction of the lumber-dryers therein described; but it is evident that the main features of both these devices are involved in the construction of the defendants' drier. They have copied substantially all that is covered by the patents, and have made a drier which is, in principle, the same as the patents were intended to describe and protect.

The finding of the court, therefore, is that the defendants infringe the first, second, fifth, sixth, and seventh claims of the reissue patent No. 8,846, and the first, second, third, fifth, sixth, and seventh claims of reissue No. 8,840. There will be a decree enjoining defendants from the further use of these patents, and a reference to ascertain and report damages.